1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11  Daniel S. Schroeder,

CASE NO. 10cv02527-CAB (RBB)

12                              Plaintiff,

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS [DOC. NO. 13]

13      vs.

Stacey H. Sullivan, et al.,

14
                              Defendant.
15

16      Presently before the Court is a motion to dismiss Plaintiff Daniel S. Schroder's December 9,

17  2010 complaint (the "Complaint"), which was filed by Defendants AUSA Stacey H. Sullivan ("AUSA

18  Sullivan"), Special Agent Mark K. Dao ("Agent Dao") and Special Agent Samuel S. Medigovich

19  ("Agent Medigovich") on June 7, 2011.  Having considered the motion, response in opposition, and

20  reply papers [Doc. Nos. 13-15], the motion [Doc. No. 13] is GRANTED.

21                              **BACKGROUND**

22      This case arises out of the indictment, arrest and criminal prosecution of Plaintiff

23  Schroeder.  The complaint at issue was filed on December 9, 2010 (the "Complaint") and alleges

24  two *Bivens* claims against AUSA Sullivan, Agent Dao, Agent Medigovich and other unknown

25  federal prosecutors and agents.[1]  As originally filed, the Complaint also alleged state law claims

26

27      [1]   In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S.
388 (1971), the Supreme Court established an implied private right of action against federal
28  officials for tortious deprivations of constitutional rights.  *Bruns v. National Credit Union
Administration*, 122 F.3d 1251, 1255 (9th Cir. 1997).  *Bivens* is the federal analog to suits

against the individual defendants.  On June 6, 2011, the United States substituted itself as a defendant in place of the individuals with respect to those claims.  As explained below, those claims are now deemed to be claims brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq.

The facts set forth herein are taken from the Complaint, and all facts pled in the Complaint are accepted as true for purposes of this procedural juncture only.

**ANALYSIS**

**1.      Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable,

_____

brought against state officials under 42 U.S.C. § 1983.  *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006).

1    but there must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Facts

2    "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief.  *Id.*

3    (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions"

4    contained in the complaint.  *Id.*

5        In evaluating whether the complaint states a plausible claim for relief, the Court should

6    consider the allegations of the complaint as a whole.  *Twombly*, 550 U.S. at 569 n.14 ("[T]he

7    complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief

8    plausible."); *see also Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 14 (1st Cir. 2011) ("The

9    question confronting a court on a motion to dismiss is whether all the facts alleged, when viewed

10   in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible.")

11   (citing *Twombly*, 550 U.S. at 569 n.14); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th

12   Cir. 2009) ("[T]he complaint should be read as a whole."); *Vila v. Inter-Am. Inv. Corp.*, 570 F.3d

13   274, 285 (D.C. Cir. 2009) (factual allegations should be "[v]iewed in their totality"); *Aldana v. Del*

14   *Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1253 n.11 (11th Cir. 2005) ("[T]he placement of

15   the paragraph in another count is unimportant . . . . We read the complaint as a whole.").

16       Finally, this review requires context-specific analysis involving the Court's "judicial

17   experience and common sense."  *Iqbal*, 129 S. Ct. at 1950.  "[W]here the well-pleaded facts do not

18   permit the court to infer more than the mere possibility of misconduct, the complaint has

19   alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.*  Moreover, "for a

20   complaint to be dismissed because the allegations give rise to an affirmative defense[,] the defense

21   clearly must appear on the face of the pleading."  *McCalden v. Ca. Library Ass'n*, 955 F.2d 1214,

22   1219 (9th Cir. 1990).

23       Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court

24   determines that the allegation of other facts consistent with the challenged pleading could  not

25   possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.

26   1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.

27   1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.

28   *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

1    **1.    The United States Properly Substituted Itself as a Defendant in Place of the**
2    **Individuals and No Material Issues of Fact Exist to Challenge the United States'**
     **Certification**

3    As originally filed, in addition to two *Bivens* claims, the Complaint also alleged state law

4    claims against the individual defendants.  On June 6, 2011, the United States substituted itself as a

5    defendant in place of AUSA Sullivan, Agent Dao, and Agent Medigovich.  As a result, those

6    claims are now deemed to be FTCA claims against the United States.

7    In this case, to effectuate the substitution of the United States, Civil Chief Tom Stahl of the

8    United States Attorney's Office ("Stahl") certified that Defendants AUSA Sullivan, Agent Dao and

9    Agent Medigovich were acting in the scope of their federal employment with regard to the events

10   described in the Complaint.  [Doc. No. 11; Doc. No 15 at 1-2.][2]  Plaintiff challenges whether Stahl

11   had the authority to issue the certification, and if so, whether material issues of fact exist with

12   regard to Defendants' alleged conduct being outside the scope of their employment.

13   First, Defendants present ample evidence that Stahl had such authority.  [*See* Doc. No. 15 at

14   1-2.]  Second, as explained below, there are no material issues of fact regarding Defendants'

15   alleged conduct being outside the scope of their employment.

16   A district court may review the certification of the United States that a federal employee

17   was acting within the scope of his employment.  *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417,

18   436-37 (1995); *see also Osborn v. Haley*, 549 U.S. 225, 247 (2007) ("[A] complaint's charge of

19   conduct outside the scope of employment, when contested, warrants immediate judicial

20   investigation. Were it otherwise, a federal employee would be stripped of suit immunity not by

21   what the court finds, but by what the complaint alleges.") (citation omitted).  Such a scope of

22   employment certification is issued or delegated by the Attorney General and constitutes "prima

23   facie evidence that a federal employee was acting in the scope of [his] employment at the time of

24   the incident and is conclusive unless challenged." *Billings v. United States*, 57 F.3d 797, 800 (9th

25   Cir. 1995) (citing *Green v. Hall*, 8 F.3d 695, 698 (9th Cir.1993)); *see also Gaytan v. United States*,

26   No. 05cv4621, 2006 WL 408562, at *1 (N.D. Cal. Feb. 17, 2006) ("Under 28 C.F.R. 15.3, the

27

28   _____
     [2]    Page references are to the internal page numbering by the parties, not the ECF-generated page numbers.

1  Chief of the Civil Division has delegatory authority to make scope of employment certifications.").

2  "The party seeking review bears the burden of presenting evidence and disproving the Attorney

3  General's certification by a preponderance of the evidence." *Billings*, 57 F.3d at 800.

4      The district court reviews a scope of employment determination under the principles of

5  *respondeat superior* of the state in which the tort occurred. *See McLachlan v. Bell*, 261 F.3d 908,

6  911 (9th Cir. 2001); *see also Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996).  Under

7  California law, "the principle is 'well established' that 'an employee's willful, malicious and even

8  criminal torts may fall within the scope of his or her employment for purposes of respondeat

9  superior, even though the employer has not authorized the employee to commit crimes or

10  intentional torts.'"  *Xue Lu v. Powell*, 621 F.3d 944, 948 (9th Cir. 2010) (quoting *Lisa M. v. Henry*

11  *Mayo Newhall Memorial Hospital*, 12 Cal.4th 291, 296 (1995)).  "A nexus must exist between the

12  employment and the tort if the employer is fairly to be held liable." *Id.* at 948.  "[T]he tort must be

13  'generally foreseeable' or 'engendered by' or 'arise from' the employment." *Id.* (quoting *Lisa M.*,

14  12 Cal.4th at 298)).

15      In this case, to dispute the United States' scope of employment certification, Plaintiff relies

16  on the allegations of the Complaint and an assertion in his opposition papers that AUSA Sullivan

17  was demoted based on conduct alleged in the Complaint.  No further evidence has been submitted

18  to show that the certification at issue is invalid.  Assuming Plaintiff's allegations and assertions to

19  be true for purposes of the certification challenge, the Court finds that Plaintiff fails to meet his

20  burden "of presenting evidence and disproving the Attorney General's certification by a

21  preponderance of the evidence." *Billings*, 57 F.3d at 800; *see also Osborn*, 549 U.S. at 247.

22      Further, the Court finds that there is no material dispute as to the scope issue, and as such,

23  Plaintiff's request to take discovery and present evidence to rebut the certification is denied.

24  *Kashin v. Kent*, 457 F.3d 1033, 1043 (9th Cir. 2006) ("While the district court has the discretion to

25  hold an evidentiary hearing, it 'should not do so if the certification, the pleadings, the affidavits,

26  and any supporting documentary evidence do not reveal an issue of material fact.'").

27  **2.      The FTCA's Exhaustion Requirements Have Been Met**

28      Having found the scope of employment certification to be valid at this juncture, it follows

1    that the United States' June 6, 2011substitution of itself in place of the individual defendants was

2    proper.  As a result, the state tort law claims against the individual defendants (Claims 3-9) should

3    proceed as claims brought against the United States under FTCA.  *See Green v. Hall*, 8 F.3d 695,

4    698 (9th Cir. 1993); *Sameena Inc. v. U.S. Air Force*, 147 F.3d 1148, 1152 (9th Cir. 1998).

5         Defendants argue that Plaintiff failed to satisfy the FTCA's exhaustion requirements prior

6    to filing the Complaint on December 9, 2010.  The FTCA exhaustion requirement is jurisdictional

7    and holds that: "[a] tort claimant may not commence proceedings in court against the United States

8    without first filing her claim with an appropriate federal agency and either receiving a conclusive

9    denial of the claim from the agency or waiting for six months to elapse without a final disposition

10   of the claim being made."  *Jerves v. U.S.*, 966 F.2d 517, 519 (9th Cir.1992); *Valadez-Lopez v.

11   Chertoff*, 656 F.3d 851, 855 (9th Cir. 2011).  Defendants argue that this exhaustion requirement

12   applies here because "the original Complaint alleges FTCA tort claims even though it does not

13   name the United States as a defendant."  [*See*, *e.g.*, Doc. No. 15 at 6.]

14        Plaintiff argues that the Court should not construe the Complaint as alleging FTCA claims

15   against the United States prior to the United States' June 6, 2011 filing of its scope of employment

16   certification and party substitution.  Defendant disagrees, arguing that the FTCA claims relate back

17   to the filing of the Complaint.  The Court is persuaded by Plaintiff's logic, but ultimately, the

18   dispute as to time is of no moment under the facts presented.

19        Here, Plaintiff presented his administrative claim on October 25, 2010 and filed this suit on

20   December 9, 2010.  It follows that Plaintiff's administrative exhaustion requirement was not

21   complete until April 25, 2011 – six months after he presented his administrative claim.  However,

22   there is nothing to prevent Plaintiff from amending the Complaint to include FTCA claims against

23   the United States, now that those claims have been administratively exhausted.  *Valadez-Lopez*,

24   656 F.3d at 856-57 (reaffirming prior guidance that premature FTCA claims may be "saved"

25   without "requir[ing] plaintiff to file an entirely new lawsuit founded on the same nucleus of

26   facts").

27        Accordingly, the Court dismisses Claims 3-9 without prejudice to refiling them against the

28   United States in an amended complaint.  *See Id.* at 867-68 ("it is well-established that an 'amended

complaint supersedes the original, the latter being treated thereafter as non-existent.'").

**3.      Plaintiff's *Bivens* Claims Against AUSA Sullivan Arising from Conduct in April 2008 are Barred by the Statute of Limitations**

A *Bivens* claim accrues when the plaintiff knows or has reason to know of the injury which gives rise to the cause of action. *Western Center for Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir. 2000). Although federal law determines when a *Bivens* claim accrues, the law of the forum state determines the statute of limitations. *Papa v. United States*, 281 F.3d 1004, 1009 (9th Cir. 2002). The state personal injury statute of limitations governs *Bivens* claims. *Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991). In California, the personal injury statute of limitations is two years. Cal. Civ. Proc. Code § 335.1; *Harbridge v. Pasillas*, No. 10cv473, 2011 WL 130157, *8 (E.D. Cal. Jan. 14, 2011).

Defendants contend that Plaintiff's *Bivens* claims filed in December 2010 against AUSA Sullivan are barred by the two-year statute of limitations to the extent they arise out of the April 15, 2008 search and seizure of documents purportedly both protected by the attorney-client privilege/work product doctrine and outside the scope of the search warrant (the "Protected Documents"). In response, Plaintiff argues that the continuing violation theory applies and allows him to seek relief for events occurring outside the limitations period because the "original seizure is ***related closely enough*** to Defendant Sullivan's later acts in using the documents." [Doc. No 14 at 16-17 (emphasis added).] However, what both parties fail to address is that Plaintiff's theory is premised on invalidated law. *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 828-29, n.3 (9th Cir. 2003) ("the Supreme Court invalidated the 'related acts' method of establishing a continuing violation" ). Thus, Plaintiff's continuing violation theory fails.

Plaintiff also argues that AUSA Sullivan violated his Fourth, Fifth, and Sixth Amendment rights each time she affirmatively used the Protected Documents. Plaintiff does little to help the Court determine when each constitutional violation accrued.

Plaintiff appears to have two Fourth Amendment claims – one for unlawful search and seizure and one for his arrest. Plaintiff's Fourth Amendment unlawful search and seizure claim is time-barred because it accrued at the time of the purportedly unlawful seizure on April 15, 2008. *Rollin v. Cook*, No. 10cv16783, 2012 WL 172877, *1 (9th Cir. Jan. 23, 2012) ("illegal search and

1 seizure, accrued on the search date"); *Matthews v. Macanas*, 990 F.2d 467, 469 (9th Cir. 1993)

2 ("illegal search and seizure is alleged, the claim accrues from the date of the wrongful act"),

3 *abrogated on other grounds*. Plaintiff filed this suit on December 9, 2010 – nearly eight months

4 outside the limitations period. Thus, Plaintiff's Fourth Amendment unlawful search and seizure

5 claim is dismissed without prejudice to pleading facts in favor of equitable tolling.

6 Moreover, the Court is not persuaded that AUSA Sullivan's use of the Protected

7 Documents (the fruit of the purportedly unlawful search) in prosecuting Plaintiff's criminal case

8 constitutes a an independent Fourth Amendment unlawful search and seizure violation. Rather,

9 her use of the Protected Documents in prosecuting Plaintiff's criminal case was an injury that

10 Plaintiff foresaw on or about April 15, 2008 as evidenced by his "almost immediate claims of

11 attorney-client privilege and work product protection."[3] [*See* ¶14.]

12 The Court now analyzes Plaintiff's Fourth Amendment unlawful arrest claim. This claim

13 accrued on December 5, 2008 when Plaintiff was arrested and detained until his arraignment

14 hearing [¶¶18-19]. *Wallace v. Kato*, 549 U.S. 384, 391-92 (2007) ("the commencement date for

15 the statute of limitations" for an unlawful arrest is "when the wrongful act or omission results in

16 damages"). Without the benefit of tolling, this claim would be four days outside the limitations

17 period. However, given Plaintiff alleges he was detained in poor health for four days, the Court

18 finds this claim was timely filed either by reason of equitable tolling or pursuant to Cal. Civ. Proc.

19 Code § 352.1(a).[4] *See* Cal. Civ. Proc. Code § 352.1(a) ("the time of that [imprisonment] disability

20 is not a part of the time limited for the commencement of the action").

21 Next, the Court analyses the timeliness of Plaintiff's claim that AUSA Sullivan's

22 affirmative use of the Protected Documents in December 2008 violated his Fifth Amendment

23 rights. As pled, Plaintiff's Fifth Amendment claims concern substantive due process first arising

24 out of the December 2008 indictment and detainment, and not his right against self-incrimination.

25

---

26 [3] In so holding, Plaintiff would not be precluded from seeking and later presenting
evidence that the Protected Documents were unlawfully seized in order to prove other claims.

27

28 [4] Tolling provisions for *Bivens* claims are borrowed from the forum state. *See generally Matthews v. Macanas*, 990 F.2d 467, 469 (9th Cir. 1993) (applying California law), *abrogated on other grounds*.

10cv02527

1    [*See* ¶¶44(c), 44(e).]  For the same reasons as set forth above, the Fifth Amendment claims arising

2    in December 2008 are timely.  Plaintiff does not allege that any Fifth Amendment violations

3    occurred prior thereto.

4           Finally, Plaintiff's Sixth Amendment right to counsel claims did not accrue until the

5    December 2008 indictment against him.  *U.S. v. Gouveia*, 467 U.S. 180, 189 (1984) ("the right to

6    counsel attaches at the initiation of adversary judicial criminal proceedings").  As a result,

7    Plaintiff's Sixth Amendment claims concerning the seizure of the Protected Documents in April

8    2008 [¶44(a)] and refusal to return them prior to December 2008 [*see* ¶44(b)] are dismissed

9    without prejudice.  However, as explained above, the Sixth Amendment claims arising in

10   December 2008 are timely due to tolling.

11   **4.      Plaintiff Sufficiently Pleads Defendant Sullivan's Role Concerning the Purportedly
            False Arrest**

12
            A *Bivens* individual capacity claim against a government official requires pleading that

13   the official, through his or her own actions, has violated the Constitution.  *Iqbal*, 556 U.S. at 676;

14
     *see also Starr v. Baca*, 633 F.3d 1191, 1195 (9th Cir. 2011). This is so because *Bivens* liability is

15   premised on proof of direct personal responsibility.  *Pellegrino v. United States*, 73 F.3d 934, 936

16   (9th Cir. 1996).  Additionally, *Bivens* suits do not allow for the imposition of vicarious liability.

17   *Iqbal*, 556 U.S. at 677.

18          Here, Defendants argue that Plaintiff fails to plead AUSA Sullivan's personal involvement

19   in Plaintiff's arrest, the search of his home and his detention at the Metropolitan Correctional

20   Center ("MCC") and Alvarado Hospital.  However, Plaintiff need only show facts showing that

21   AUSA Sullivan's actions caused the violations.  The Court finds that Plaintiff sufficiently pleads

22   AUSA Sullivan's actions in obtaining the December 2008 indictment caused Plaintiff's alleged

23   false arrest.  [*See* ¶¶15-17.]

24           In contrast, Plaintiff fails to adequately plead that AUSA Sullivan caused the agents

25   executing the April 2008 search warrant to go beyond its scope in order to seize the Protected

26   Documents.  Similarly, there are insufficient factual allegations to support Plaintiff's claim that

27   Defendant Sullivan should be held responsible for the detention conditions alleged at the MCC and

28   Alvarado Hospital.

Further, Plaintiff's *Bivens* conspiracy claim against AUSA Sullivan, Count 1, is dismissed for failing to plead enough facts to support Defendant Sullivan's role in the alleged conspiracy surrounding the December 2008 conduct. *Rouse v. Campagna*, No. 10cv1304, 2010 WL 4817994, *1 (S.D. Cal. Nov. 19, 2010) ("plaintiff must state specific facts to support the existence of the claimed conspiracy").

Plaintiff is granted leave to amend to address these deficiencies.

**5.     The *Bivens* Claims Against AUSA Sullivan Arising Out of Plaintiff's Arrest are Dismissed on the Basis of Qualified Immunity**

Defendants argue that qualified immunity shields AUSA Sullivan from any liability with respect to the substantive *Bivens* claims, Count 2, arising from Plaintiff's December 2008 arrest. The parties agree that qualified immunity does not provide protection to those who knowingly violate the law. *See also Marsh v. County of San Diego*, No. 11cv55395, 2012 WL 1922193, *7-*8 (9th Cir. May 29, 2012) (government officials "can, therefore, be held liable only if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right'"). As such, Plaintiff argues AUSA Sullivan knew "no evidence had been presented to the grand jury indicating in any way that Plaintiff committed any crimes." [Doc. No. 14 at 20.]

To prevail on his unlawful arrest claim, Plaintiff must "demonstrate that there was no probable cause to arrest him." *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010). However, having carefully reviewed the Complaint, the Court finds Plaintiff's lack of probable cause allegations to be legal conclusions devoid of sufficient factual support. Therefore, the *Bivens* claims against Defendant Sullivan arising out of Plaintiff's arrest are dismissed without prejudice on the basis of qualified immunity.

Defendants do not appear to argue for dismissal of Plaintiff's Sixth Amendment right to counsel claims arising out of AUSA Sullivan's use of the Protected Documents in December 2008 or thereafter. *See generally Partington v. Gedan* 961 F.2d 852, 864 (9th Cir. 1992) ("the Sixth Amendment right to counsel *will* stand as a bar to any governmental use of information obtained in violation of a defendant's attorney-client privilege"). However, while Plaintiff generally pleads he made repeated assertions of attorney-client privilege, Plaintiff fails to allege facts showing that

1   AUSA Sullivan knew or should have known of those assertions such that her use of the Protected

2   Documents violated Plaintiff's Sixth Amendment right to counsel.  Thus, Plaintiff's Sixth

3   Amendment claims against AUSA Sullivan are also dismissed without prejudice on the basis of

4   qualified immunity.

5        Given no claims remain against AUSA Sullivan, the Court declines to address the parties'

6   absolute immunity arguments.

7   **6.    *Bivens* Claims Against Agents Dao and Medigovich**

8        Similar to the claims against AUSA Sullivan, the constitutional violations alleged to have

9   occurred on April 15, 2008 are time-barred as asserted against Agents Dao and Medigovich.  Thus,

10  the April 15, 2008 claims are dismissed without prejudice to pleading facts in support of equitable

11  tolling.

12       With respect to the December 2008 arrest and detention of Plaintiff, the claims against

13  Agents Dao and Medigovich are dismissed without prejudice.  As the Supreme Court held in *Iqbal*,

14  "a plaintiff must plead that each Government-official defendant, through the official's own

15  individual actions, has violated the Constitution.  *Iqbal*, 556 U.S. at 676; *Dupris v. McDonald*, No.

16  08cv8132, 2010 WL 231548, *3 (D. Ariz. Jan. 13, 2010) ("Without specifically articulating which

17  defendant did what to whom, it is impossible to establish whether the allegations plausibly give

18  rise to an entitlement to relief.").  Here, there are no plausible allegations that Agents Dao and

19  Medigovich were personally involved in causing the alleged constitutional violations.

20       Plaintiff seems to contend that Agents Dao and Medigovich's actions amounted to the

21  wrongful arrest and detainment of Plaintiff in violation of the Fourth Amendment and his due

22  process rights under the Fifth Amendment.[5]  Plaintiff also contends that while detained he was

23  deprived of various constitutional rights, presumably in violation of the Fifth Amendment.  In

24  addition, Plaintiff appears to assert that he was denied counsel during his detainment in violation of

25  his Sixth Amendment right to counsel.

26  _____

27       [5]    In amending the Complaint, Plaintiff should specify each constitutional provision each
    defendant allegedly violated and his basis for so alleging for each provision, not just list the Fourth,
28  Fifth and Sixth Amendments as being generally violated.  The Complaint also includes vague
    allegations about Plaintiff being denied "equal protection of the laws," but the allegations fail explain
    why Plaintiff is entitled to make an equal protection claim.

1    Upon careful review of the Complaint, Plaintiff pleads that Agent Medigovich, not Agent

2  Dao, was present during Plaintiff's December 5, 2008 arrest.  [¶19.]  Plaintiff also pleads that

3  Agents Dao and Medigovich were present at Alvarado Hospital.  [ ¶24.]  However, Plaintiff fails to

4  plead that either defendant used force against Plaintiff in December 2008 or played any role in

5  allegedly forcing him to answer invasive questions, denying him proper medical care, or refusing

6  to provide him contact with his lawyer.  The Complaint vaguely references Plaintiff's "statements

7  to Agent Dao" [¶31], but there is no context for when or where those statements were made.  There

8  are no allegations that Defendants were present at the first or second visit to the MCC in December

9  2008.  There are no factual allegations as to who, *i.e.*, "harmfully, offensively, and injuriously

10  touched Mr. Schroeder by physically handcuffing him, strip searching him, shackling him to a

11  hospital bed, restricting him from sitting up, and sedating him."  [¶62.]  There are also no factual

12  allegations showing that Defendants knew or should have known that there was no probable cause

13  to arrest and detain Plaintiff, as alleged.  Since there are no plausible allegations that Agents Dao

14  and Medigovich were personally involved in causing the alleged constitutional violations, the

15  December 2008 claims against them are dismissed without prejudice.

16    Plaintiff argues that his medical condition in December 2008 should excuse his failure to

17  plead facts showing Defendants' personal involvement.  However, the Complaint does not contain

18  allegations showing that certain facts are unavailable to him, or whether and why certain facts are

19  only available to Defendants.  Considering the facts alleged, Plaintiff's substantive *Bivens* claims,

20  Count 2, against Agents Dao and Medigovich are insufficiently pled.

21    Finally, the Complaint fails to plead enough facts to support Agents Dao and Medigovich's

22  roles in the alleged conspiracy surrounding the December 2008 conduct.  *Rouse*, 2010 WL

23  4817994, *1 ("plaintiff must state specific facts to support the existence of the claimed

24  conspiracy").  Thus, Plaintiff's *Bivens* conspiracy claim against Agents Dao and Medigovich,

25  Count 1, is dismissed without prejudice.

26    **CONCLUSION**

27    For the reasons stated above, the Court GRANTS Defendants' motion to dismiss [Doc. No.

28  13] without prejudice.  The Complaint is dismissed without prejudice to filing an amended

complaint to cure the deficiencies set forth below on or before July 11, 2012.

DATED:  June 11, 2012

_____

**CATHY ANN BENCIVENGO**
United States District Judge